# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5728 | **DATE** | 9/26/2002 |
| **CASE TITLE** | DONLYN DISTRIBUTION, INC., et al vs. BP AMOCO CORPORATION, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The CTA's motion [33-1] to dismiss is granted and BP's motion [36-1] is granted in part and denied in part. Because Count VI is the only federal claim remaining discovery is to proceed on this claim only. If Donlyn can survive a motion for summary judgment discovery will be ordered as to Donlyn's state claims. Enter Memorandum Opinion and Order. Status hearing set for 10/9/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 3 0 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | G.Y. docketing deputy initials | 45 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | CG | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONLYN DISTRIBUTION, INC., ) <br> d/b/a/ DONLYN2 INC., formerly Donlyn Inc. ) <br> an Illinois Corporation ) <br> ) <br> and ) <br> ) <br> BARBARA MITCHELL, individually and ) <br> on behalf of DONLYN DISTRIBUTION INC. ) <br> d/b/a DONLYN 2 INC. formerly Donlyn, Inc. ) <br> an Illinois Corporation ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> BP AMOCO CORPORATION ) <br> also known as BP Amoco Oil Company, ) <br> and formerly Amoco Oil Company, ) <br> a Maryland Corporation ) <br> ) <br> and ) <br> ) <br> CHICAGO TRANSIT AUTHORITY ) <br> an Illinois Municipal Corporation ) <br> ) <br> Defendants. ) | **DOCKETED** <br> SEP 3 0 2002 <br><br> No. 01 C 5728 <br><br> Judge Ronald A. Guzman |

## MEMORANDUM OPINION AND ORDER

Pending are Defendants BP Amoco and the Chicago Transit Authority motions to dismiss Plaintiffs Donyln Distribution, Inc. and Barbara Mitchell's complaint pursuant to Fed. R. Civ. Proc. 12(b)(6). For the reasons set forth the CTA's motion to dismiss is granted and BP Amoco's motion is granted in part and denied in part.

## BACKGROUND FACTS

The facts here are taken from Plaintiffs' complaint and, for purposes of defendants' motion to dismiss, the court accepts these facts are true. Plaintiff, Donlyn Distribution, Inc. ("Donlyn"), is an African-American, female owned petroleum distribution company. Plaintiff Barbara Mitchell is the President and primary shareholder of Donlyn. Donlyn is certified by the CTA as a Disadvantaged Business Enterprise ("DBE") in accordance with a federal program under U.S. DOT Regulation, 49 C.F.R. Part 23, Section 106(c), the Surface Transportation and Uniform Relocation Assistance Act of 1987 (STURAA). The DBE program seeks to aid minority owned business participation in various markets. The Chicago Transit Authority ("CTA") requires DBE participation at 30%. In 1999, BP and the CTA entered into a contract for the sale of diesel fuel, and October 4, 1999, BP awarded Donlyn the DBE subcontract.

After beginning work on the contract, a contractual dispute developed between Donlyn and BP and the CTA. Donlyn alleges that BP engaged in discriminatory practices that made it impossible for Donlyn to perform under the contract. BP alleges that Donlyn failed to meet delivery deadlines and to transport the diesel fuel in containers not contaminated with gasoline. This lead to Donlyn owing $835,425.59 that had been advanced to Donlyn to purchase fuel.

In September 2000, after BP had received checks from Donlyn that were dishonored due to insufficient funds, Donyln and BP participated in an audit that confirmed the amount owed. BP sought to collect the amount from Donlyn. BP warned Donlyn that if the amount were not paid, Donlyn's contract would be terminated.

Donlyn refused to pay the amount to BP and in December 2000, sought access to the CTA's DBE compliance review process available under the fuel procurement contract between

the CTA and BP. In Donlyn's complaint to the CTA, Donlyn alleged that BP's contract allocation scheme under the CTA contract were fraudulent and intentionally racially discriminatory, on their face and as implemented. The CTA's DBE Contract Compliance Manager requested a response from BP. On December 15, 2000 BP's in-house counsel responded to Donlyn's complaint in a letter to the CTA's compliance manager. According to Donlyn the CTA then suddenly disappeared from the process. Donlyn alleges that since the breach of contract claims were willfully and intentionally uninvestigated by the CTA, the CTA effectively allowed BP to act in breach of the contract.

In April 2001, Donlyn filed a complaint with the Office of Civil Rights of the Federal Transit Administration ("FTA"), a division of the U.S. Department of Transportation. Both BP and the CTA were served with copies of the complaint. Donlyn alleges that BP did not respond to the complaint, and that the CTA "secretly" sought to have Donlyn's complaint dismissed for lack of jurisdiction. The record is unclear as to whether an administrative decision was ever reached in the case.

On November 27, 2001 Donlyn filed its complaint against BP and the CTA alleging a failed contract action, unjust enrichment, breach of contract, fraudulent inducement (Counts I, II, III, IV and V), and racial discrimination under 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986 (Counts VI, VII, VIII, IX, X, XI, XII and XIII). This court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, federal question jurisdiction, not as Plaintiffs allege under 28 U.S.C. § 1332, diversity jurisdiction. Diversity is not complete because Plaintiffs are an Illinois corporation and an Illinois citizen and the CTA is an Illinois corporation.

## DISCUSSION

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to prejudge the merits of the claim. *Gibson v. City of Chicago*, 910 F. 2d 1510, 1520 (7th Cir. 1990). Dismissal is only appropriate if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Strasburger v. Board of Education*, 143 F. 3d 351, 359 (7th Cir. 1981). In ruling on such motions, Rule 12(b)(6) requires courts to "accept as true all the plaintiff's well-pleaded factual allegations and the inferences reasonably drawn from them." *Yeksigian v. Nappi*, 900 F. 2d 101, 102 (7th Cir. 1990). Therefore, motions to dismiss are granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson*, 35 U.S. 41, 45-46 (1957).

### PLAINTIFFS SECTION 1981 CLAIM AGAINST BP IS SUFFICIENT TO STATE A CLAIM (COUNT VI)

In Count VI of Plaintiff's first amended complaint Donlyn complains that throughout the course of Donlyn's performance under CTA contracts 1997 and 1999, BP engaged in intentionally discriminatory practices, conduct and policies and denied and deprived Plaintiff of the same right to make and enforce contracts, be parties, give evidence and to the full and equal benefit of laws and proceedings for the security of person and property as is enjoyed by white citizens on the basis of race is prohibited under 42 U.S.C. §1981 (Complaint ¶180 & 181). Donlyn then alleges that BP engaged in intentionally racially discriminatory conduct when it excluded Donlyn and other minority owned firms from participation under the CTA contract (¶183) and that Donlyn was treated differently from other similarly situated non-minority owned and operated entities on the basis of race (¶187).

Section 1981 primarily addresses racial discrimination in contractual relationships. As amended by the Civil Rights Act of 1991, the statute reads in relevant part:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...
>
> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.
>
> (c) the rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(a)-(c); *see also Morris v. Office Max, Inc.* 89 F. 3d 411, 413 7th Cir. 1996).

By its language, then, section 1981 established four protected interests: (1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments. *See Phelps v. Wichita Eagle-Beacon,* 886 F. 2d 1262, 1267 (10th Cir. 1989). To sustain a claim under section 1981, a plaintiff must prove that: (1) he is a member of a protected racial group; (2) the defendant intended to discriminate against him on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute, namely the making and enforcement of contracts. An essential element of a § 1981 claim is that the defendant's action be motivated by racially discriminatory animus. *Freeman v. Chicago Park Dist.,* 189 F. 3d 613, 618 (7th Cir. 1999). Further, § 1981 protects "against impairment by nongovernmental discrimination and impairment under color of State law." 28 U.S.C. § 1981(c). Such actions, therefore, may be brought against a private individual or company. *See id.*

In this case, the court finds that Donlyn's allegations of intentional discrimination give

rise to a § 1981 claim. To be sure they are conclusory in nature but the mere allegation that BP purposefully discriminated against Donlyn based upon race enables the complaint to withstand BP's motion to dismiss. Whether Donlyn may be able to establish as a matter of law that BP is liable for violations of section 1981 is not before us on a motion to dismiss. In light of such BP's motion to dismiss Count VI is denied.

## PLAINTIFFS' SECTION 1983 CLAIMS (COUNTS VII & VIII) FAIL TO STATE A CLAIM

Donlyn next asserts a claim under 42 U.S.C. § 1983 against defendants for their alleged deprivation of plaintiffs' due process and equal protection rights. In support of these claims Donlyn alleges that defendants acted under color of law and in conspiracy with each other to deprive Donlyn of rights and privileges secured by the Constitution and the laws of the United States. Donlyn alleges that defendants deprived it of procedural due process, equal protection and federal rights under Title VI. Donlyn alleges that the conduct was racially motivated, interfered with Donlyn's right to access the FTA's Office of Civil Rights administrative review process, willfully engaged in a conspiracy to deprive and interfere with Donlyn's rights and privileges under the contract and abusively used its monopolistic market advantage to interfere with Donlyn's Equal Protections rights under the 14th Amendment. (Complaint ¶¶ 198-200).

In order to state a claim for relief under § 1983, a plaintiff must show a violation of a federally protected right, and that the deprivation was the result of state action. *Indianapolis Minority Contractors Association, Inc. v. Wiley*, 187 F. 3d 743, 750 (7th Cir. 1999). In determining whether a statute gives rise to a federally protected right, there are three factors a court must consider. *Wiley*, 187 F. 3d 743, 750. First, there must be evidence of a legislative

intent to confer a benefit on the plaintiff. *Id.* Second, the plaintiff must show that the right is concrete and capable of judicial enforcement. *Id.* And third, the statute must place a mandatory obligation on the States. *Id.* As the Supreme Court recently reiterated, § 1983 "basically seeks to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights' and to provide related relief." *Richardson v. McKnight*, 521 U.S. 399 (1997).

A private actor is only liable under § 1983 when it can be shown that the private person was engaged in "joint action" with a state actor, has received aid from the state, or the private actor's conduct is in any way attributable to the state. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928 (1982). Recovery against a governmental body like the CTA under the § 1981 and 1983 may not be based on respondeat superior. *Jett v. Dallas Ind. School Dist.*, 491 U.S. 701, 736 (1984), *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 659 (1978). For the CTA to be liable Donlyn would have to show that the CTA's official policy or custom was discriminatory. *Smith v. Chicago Reform Bd. of Trustees*, 165 F.3d 1142, 1148 (7th Cir. 1999). To establish joint action based on a conspiracy, the plaintiff must additionally show an agreement between the private actor and state actor, and that the private actor and state actor engaged in concerted action. *Id. at 931.*

In *Wiley*, the Seventh Circuit examined STURAA to determine whether the statute created a federally protected property interest. *Wiley*, 187 F.3d at 751. The Court held that STURAA did not create an individual entitlement for DBE participants, it rather merely created a regulatory scheme for states to follow when receiving federal funds. *Id* at 748. In *Wiley* the district court concluded that the statutory scheme under STURAA does not give rise to individual rights enforceable under § 1983. The court explained that, because the statutory scheme only

prescribes a course of conduct for states to follow in structuring their DBE programs but does not confer any particular benefits on any particular individuals, the plaintiffs have no individual rights enforceable under § 1983. *Id.* The court emphasized that the plaintiffs do not, however, have an individual right to sue under § 1983 to remedy isolated violations of an otherwise compliant plan.

Taking Donlyn's facts as true we find that Donlyn fails to state a claim for violation of 42 U.S.C. §1983 under SUTRAA. Under *Wiley*, Donlyn's reliance on its certification as a DBE is insufficient as a matter of law to survive this motion to dismiss. Even accepting Donlyn's allegation that another DBE with the City of Chicago was terminated this at most amounts to isolated violations which are not actionable. Moreover, Donlyn fails to allege sufficient facts to set forth a conspiracy to satisfy the joint action doctrine. The liberal pleading requirements under Rule 8 of the Federal Rules of Civil Procedure allow a plaintiff to give a short and plain statement of the claim. *Leatherman v. Tarrant County Narcotics and Intelligence Coordination Unit,* 507 U.S. 163, 169 (1993). Plaintiffs' complaint contains no facts tending to show that officials for the CTA acted in concert with BP to deprive them of a federal right. Alleging that the CTA did nothing in response to Donlyn's affirmative action complaint is insufficient to demonstrate the requisite conspiratorial nexus. There is nothing in the complaint that would suggest a conspiracy or joint action between the CTA and BP beyond the usual communications required between two parties to a contract. Specifically, Donlyn does not allege any mutual assent or meeting of the minds between the CTA and BP to racially discriminate against Donlyn. Plaintiff's only factual allegations are that the "CTA vetted the arrangement at the time" and that the allocations "required the CTA's express review, evaluation, and approval." (Pl. Mem. In

Opp'n to Def.'s Mot. to Dismiss at 28).

Finally, Donlyn has failed to state a §1983 claim under the Fourteenth Amendment. In order to establish liability under § 1983 for a violation of equal protection, the plaintiffs "must show that the defendants acted with a nefarious discriminatory purpose, and discriminated against [them] based on [their] membership in a definable class." *Nabozny v. Podlesny*, 92 F. 3d 446,453 (7th Cir. 1996). *Nabozny* explained the following:

> the gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group.

*Nabozny* at 453-454 (quoting *Shango v. Jurich*, 681 F. 2d 1091, 1104 (7th Cir. 1982).

Donlyn has failed to set forth sufficient facts to support its allegation that the CTA engaged in invidious classification as to the granting and/or administration of the BP contract. Because Donlyn has failed to do so state action cannot be concluded for purposes of section 1983 liability. Donyln does not argue a discriminatory custom or policy on the CTA's part rather Donyln complains of an isolated incident. In addition, there is no constitutional right to a DBE contract. Therefore, Counts VII and VIII are dismissed with prejudice.

### PLAINTIFFS FAIL TO SUFFICIENTLY SET FORTH FACTS TO SUPPORT THEIR ALLEGED §1985(3), § 1986 AND DUE PROCESS CLAIMS (COUNTS IX, X, & XII)

In order to establish a claim under § 1985(3), a plaintiff must show (1) a conspiracy; (2) a purposeful deprivation of equal protection or privileges and immunities under the laws; (3) an act

in furtherance of the conspiracy; and (4) injury to person or property or deprivation of a federally protected right. *Triad Assoc., Inc. v. Chicago Hous. Auth.*, 892 F. 2d 583, 591 (7th Cir. 1989). Although § 1985(3) does not create any substantive right, it provides a remedy when individuals conspire to deprive a member of a protected class of equal protection of the laws or equal privileges and immunities under the law. *Dixon v. City of Lawton*, 898 F. 2d 1443, 1448 (10th Cir. 1990). To prove a conspiracy in violation of § 1985(3), plaintiffs must show the existence of a conspiracy intended to deny them equal protections under the law or equal privileges and immunities of the laws resulting in an injury or deprivation of federally protected rights, and an overt act in furtherance of the conspiracy. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971). Plaintiff's must also demonstrate that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993) (*quoting Griffin*, 403 U.S. at 102, 91 S. Ct. 1790).

In support of their section 1985(3) claim, Donlyn have not raised any arguments other than those set forth in support of their section 1983 claim. Thus, in light of the court's conclusion that plaintiff's failed to set forth sufficient facts demonstrating a conspiracy for purposes of section 1983, it need not address any further issues as to section 1985.

In order to state a claim under §1986, plaintiff must establish a valid §1985 claim. *Brown v. Moore*, No. 86 C. 8332 1987 WL 6770 at *2 (N.D. Ill. 1987). Section 1986 places liability on individuals named in a valid section 1985 claim for failure to prevent the injury. *Id.* "No claim may lie under section 1986 unless a valid claim setting forth a conspiracy to deprive a person of his civil rights is established under section 1985." Because Donlyn has failed to set forth a valid

§ 1985(3) claim, the section 1986 claims fails. Furthermore, private actions based on Title VI may not be brought under section 1983. *Alexander v. Chicago Park Dist.*, 773 F. 2d 850, 856 (7th Cir. 1985). The Seventh Circuit extended this holding to Section 1985(3). *Boulahanis v. Board of Regents*, 198 F. 3d 633, 640-641 (7th Cir. 1999). Therefore, Counts IX and X are dismissed with prejudice.

## CONCLUSION

The CTA's motion to dismiss is granted (#33-1) and BP Amoco's motion is granted in part and denied in part (#36-1). Because Count VI is the only federal claim remaining discovery is to proceed on this claim only. If Donlyn can survive a motion for summary judgment discovery will be ordered as to Donlyn's state claims.

**So Ordered.**

Entered: 7/26/02

Judge Ronald A. Guzman
United States Judge